UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-20324-CR-MARTINEZ

UNITED STATES OF AMERICA

v.

CARLOS RAFAEL SAEZ DORTA and
VERONICA RAMOS HERNANDEZ,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on the Substituted (Corrected/Clarifying and Amended) Joint Motion for New Trial Pursuant to Fed. R. Crim. P. 33(a) and Request for Evidentiary Hearing that was filed by Defendants Carlos Rafael Saez Dorta and Veronica Ramos Hernandez (collectively, "Defendants"). ECF No. 325. In that motion, the Defendants argue that they are entitled to a new trial "based on newly discovered evidence." *Id.* at 1. More specifically, the Defendants argue that they are entitled to a new trial in this case because of (1) "apparent, arguable or actual misconduct" by attorney Robert Perez ("Attorney Perez"), who represented co-defendant Dianelis Garcia Alvarez ("Garcia") in this case and who the Defendants suggest may have acted to assist Garcia and the government in obtaining incriminating evidence against them despite the possible existence of an attorney-client relationship with one or both of the Defendants; and (2) the government's proceeding with the case despite possible knowledge of Attorney Perez's potential misconduct.[1] *Id.* at 1-2.

---

[1] The undersigned notes that the Defendants' arguments are presented in their Substituted (Corrected/Clarifying and Amended) Joint Motion for New Trial in a more equivocal manner than in their original, now-stricken new trial motion, *see* ECF Nos. 303, 330, and that they now raise questions and suggest inferences rather than directly contend that there was misconduct by Attorney Perez or the government. *See, e.g.*, ECF No. 325 at 1-2. The repackaging of the

A. **The Law Governing Motions for New Trial Based on Newly Discovered Evidence**

The Eleventh Circuit has made clear that "[m]otions for new trial based on newly discovered evidence are highly disfavored in the Eleventh Circuit and should be granted only with great caution." *United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006) (en banc). Under Federal Rule of Criminal Procedure 33(b)(1), a new trial is warranted based on newly discovered evidence only if a defendant shows that:

> (1) the evidence was discovered after trial, (2) the failure of the defendant to discover the evidence was not due to a lack of due diligence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material to issues before the court, and (5) the evidence is such that a new trial would probably produce a different result.

*United States v. Jernigan*, 341 F.3d 1273, 1287 (11th Cir. 2003) (quoting *United States v. Ramos*, 179 F.3d 1333, 1336 n.1 (11th Cir. 1999)), *abrogated in part on other grounds by Rehaif v. United States*, 588 U.S. 225 (2019); *see also, e.g.*, *United States v. Scrushy*, 721 F.3d 1288, 1304-05 (11th Cir. 2013); *United States v. Thompson*, 422 F.3d 1285, 1294 (11th Cir. 2005); *United States v. Hall*, 854 F.2d 1269, 1271 (11th Cir. 1988); *United States v. Slocum*, 708 F.2d 587, 600 (11th Cir. 1983). "The failure to satisfy any one of these elements is fatal to a motion for a new trial," *Thompson*, 422 F.3d at 1294 (quoting *United States v. Lee*, 68 F.3d 1267, 1274 (11th Cir. 1995)), and the burden of satisfying these elements and justifying a new trial rests on the defendant, *see, e.g.*, *Campa*, 459 F.3d at 1151. However, "[n]ewly discovered evidence need not relate directly to the issue of guilt or innocence to justify a new trial, but may be probative of another issue of law," *Scrushy*, 721 F.3d at 1304 (quoting *Campa*, 459 F.3d at 1151), and "evidence that would

---

Defendants' arguments, however, does not remedy the fact that, as explained below, there is a dearth of evidence to support the Defendants' new trial arguments, as was repeatedly stated by Judge Becerra when explaining that the Defendants' original motion was baseless. *See, e.g.*, ECF No. 327-1 at 13, 16-22, 41-42, 44, 48-50, 53-54.

'afford reasonable grounds to question . . . the integrity of the verdict'" may furnish grounds for a new trial, *id.* (quoting *United States v. Williams,* 613 F.2d 573, 575 (5th Cir. 1980)).

    B.    **Analysis of the Defendants' Request for a New Trial**

As a threshold matter, although the Defendants have presented declarations and other evidence of communications and interactions with Attorney Perez that they contend reveal that they had an attorney-client relationship with Attorney Perez, *see, e.g.*, ECF No. 325-1 at 2-4, 5-7, evidence concerning the Defendants' relationship, communications, and interactions with Attorney Perez and Attorney Perez's actions under the alleged conflict of interest that resulted from the purported attorney-client relationship between Attorney Perez and the Defendants is not newly discovered evidence. As participants in their communications and interactions with Attorney Perez, the Defendants had knowledge of any such evidence concerning their relationship with Attorney Perez long before their trial even commenced, and they similarly had knowledge of any conflict of interest that may have existed during Attorney Perez's representation of co-defendant Garcia, who cooperated with the government in the investigation and prosecution of the Defendants. Indeed, the Defendants have conceded that the alleged relationship, communications, and interactions with Attorney Perez and the alleged actions taken by Attorney Perez on behalf of cooperating co-defendant Garcia while Attorney Perez had an alleged conflict of interest are not newly discovered. *See, e.g.*, ECF No. 327-1 at 5-7, 21.[2] A new trial pursuant to Rule 33(b)(1) based on this evidence must therefore be denied.

---

[2] The undersigned recognizes that there is a factual dispute concerning the Defendants' relationship with Attorney Perez. While the Defendants never actually assert that they retained Attorney Perez or that he was their lawyer, they state in their declarations that they sought and obtained legal advice from Attorney Perez when they approached and met with him concerning co-defendant Garcia's arrest and his resulting representation of Garcia. ECF No. 325-1 at 2-4, 5-7. Attorney Perez, on the other hand, has testified that he only represented Garcia, that he did not represent the Defendants, that he so informed them, and that he declined the Defendants' request to consult with

The only evidence advanced in the Defendants' new trial motion that might qualify as "newly discovered" is evidence concerning *the prosecutor's knowledge* of an attorney-client relationship between Attorney Perez and the Defendants. However, the evidence that the Defendants have presented on this issue—whether the government had knowledge that Attorney Perez had an attorney-client relationship with the Defendants and engaged in misconduct due to the resulting conflict of interest—establishes that the government did ***not*** have knowledge of any such alleged attorney-client relationship or any resulting misconduct by Attorney Perez. Indeed, after carefully scrutinizing the Defendants' filings and submissions (including the transcript of the deposition of Attorney Perez), the transcript of the hearing before Judge Becerra, and all of the pertinent portions of the record, the undersigned finds that the evidence establishes that the government was ***not*** informed that there was an attorney-client relationship between the Defendants and Attorney Perez but was instead informed that there was no such relationship.

Here, the evidence reveals that the prosecutor in this case was informed by Attorney Perez that he did not have an attorney-client relationship with the Defendants. On June 3, after co-defendant Garcia's arraignment, Attorney Perez learned from AUSA Shaw that the government was interested in having Garcia cooperate against the Defendants. ECF No. 336 at 69, 76. Attorney Perez told AUSA Shaw that the Defendants, using checks from Polyclinic, had paid his $1,500 initial appearance fee and $10,000 of his retainer for the representation of Garcia. *Id.* at

---

them and instead referred them to another attorney. *See infra.* Because the Defendants' relationship with Attorney Perez is not newly discovered evidence, the Court need not and the undersigned does not resolve the disputed factual issue concerning the Defendants' relationship with Attorney Perez. The undersigned notes, however, that, beyond the self-serving statements in the Defendants' declarations, there is an absence of evidence establishing the existence of an attorney-client relationship between the Defendants and Attorney Perez. Indeed, aside from the Defendants' declarations, the evidence in the record indicates that there was no attorney-client relationship between Attorney Perez and the Defendants.

4

70-71, 73.[3]  Attorney Perez also told AUSA Shaw that he had met with Garcia and the Defendants several times in connection with Garcia's initial appearance, his retention, and Garcia's arraignment.  *Id.* at 71, 73-74.  AUSA Shaw had some concerns and questions for Attorney Perez and later sent him an email asking for his responses in writing.  *Id.* at 71-73.

In her email, AUSA Shaw asked Attorney Perez if he had previously represented the Defendants, and Attorney Perez responded, "NO."  ECF No. 325-1 at 22.  AUSA Shaw further asked Attorney Perez to confirm that he had "discussed with [his] client (Dianelis Garcia Alvarez) that [he] represent[ed] her alone and w[ould] not be sharing any sensitive or confidential information about the case with the clinic owners [*i.e.*, the Defendants] (regardless of whether they are paying part of [Attorney Perez's] fees," and Attorney Perez responded, "YES and I will not be sharing any confidential information about the case with the clinic owners [*i.e.*, the Defendants]." *Id*.  Finally, AUSA Shaw asked whether the Defendants were "also clear on [Attorney Perez's] duties to [his] client [*i.e.*, Garcia]," and Attorney Perez responded, "YES, my fee agreement covers all the rules by the Florida Bar regarding conflict of interests and duty of loyalty, privilege and confidentiality."  *Id.*[4]

---

[3] Significantly, the mere fact that the Defendants paid part of the fees for Attorney Perez to represent co-defendant Garcia does not establish the existence of any ethical impropriety or conflict of interest.  *See, e.g.*, *United States v. Tobon-Hernandez*, 845 F.2d 277, 281 (11th Cir. 1988) ("[T]he payment of legal fees by a third party does not automatically rise to the level of a conflict of interest."); *United States v. Corona,* 108 F.3d 565, 575 (5th Cir. 1997) (holding that defendant's counsel's receipt of payment from co-defendant did not establish a conflict of interest, as "[t]he fact that Corona paid McDonald's counsel does not mean that [McDonald's counsel] represented Corona"); R. Regulating Fla. Bar 4-1.8(f).  Indeed, the Defendants have not argued otherwise.  The fact that AUSA Shaw was made aware that Attorney Perez had received money from the Defendants to pay for part of the fees for the representation of Garcia is simply not material to any issue in this case.

[4] When the Defendants' current attorneys contacted AUSA Shaw and asked her if she had any knowledge that Attorney Perez had been engaged in a dual representation of the Defendants and co-defendant Garcia, AUSA Shaw informed them, consistently with the response that she had

Attorney Perez's representations to AUSA Shaw that he did not have an attorney-client relationship with the Defendants and that the Defendants were simply helping to pay for his representation of co-defendant Garcia were also in keeping with his sworn testimony. According to Attorney Perez's sworn deposition testimony, although the Defendants contacted and met with him to hire him to represent their employee, co-defendant Garcia, the Defendants also asked him as a general matter if he could also consult with them to make sure that what they were doing was correct and above board. ECF No. 336 at 17, 29, 82. Attorney Perez, however, never agreed to consult with the Defendants, *id.* at 74, and he instead told the Defendants that he "could not represent them because of a potential conflict," and he referred the Defendants to attorney Henry Bell and gave them Bell's number. *Id.* at 47, 48, 82.

Because the Defendants were going to pay part of the fee for Attorney Perez's representation of co-defendant Garcia, Attorney Perez met with co-defendant Garcia and the Defendants to discuss the fee agreement. ECF No. 336 at 48-49, 52-53. Attorney Perez "wanted to be clear where [his] representation lied," "[w]here [his] responsibilities lied," "[w]here [his] duties lied," and "[w]here [his] loyalties lied," and he also "wanted to let them know what the Florida Bar thought of that arrangement." *Id.* at 46. Attorney Perez explained the fee agreement, that he was representing Garcia, and that his obligations, duties, and loyalty were all exclusively to Garcia. *Id.* at 58-59. He also provided a copy of the fee agreement to the Defendants, who were committing to pay $10,000 toward Attorney Perez's representation of Garcia and who gave him a check for $10,000 from Polyclinic after the agreement was signed. *Id.* at 59-60, 62.

---

received from Attorney Perez, that she had no knowledge of any such circumstances. ECF No. 327-1 at 9-10, 19.

The fee agreement, which was a written agreement for Attorney Perez to "serve as counsel to DIANELIS GARCIA ALVAREZ," identified Garcia as Attorney Perez's client, stated that "[t]he client has advised . . . that third parties will be assisting in paying the fees and costs in the amount of $10,000.00," and was signed by Defendant Carlos Saez as a "3rd Party." ECF No. 325-1 at 19-20. In addition to providing a summary explanation of Florida Bar rules concerning conflicts of interest, the fee agreement explained that the agreement could allow a third party to assist with the payment of fees if Attorney Perez "does not compromise [his] professional independence or duty of loyalty to" Garcia, and the agreement further explained that Florida Bar Rule 4-1.8 prohibits a lawyer "from accepting compensation for representing a client from one other than the client unless there is no interference with the lawyer's independence of professional judgment, and information relating to representation of a client is protected as required." *Id.*

Contrary to the Defendants' arguments, the evidence in the record demonstrates that the government had been informed by Attorney Perez that he had *not* represented the Defendants, that he had informed co-defendant Garcia that he represented her alone and would not be sharing confidential case information with the Defendants, and that he had made his duties to co-defendant Garcia clear to the Defendants, including through his fee agreement which covered the Florida Bar rules concerning conflict of interest, duty of loyalty, privilege, and confidentiality. *See* ECF No. 325-1 at 22; *see also id.* at 19-20. Indeed, given that Attorney Perez testified that he never represented the Defendants, that he explained to the Defendants that he was solely representing Garcia and that his obligations, duties, and loyalty were all exclusively to Garcia, and that he declined the Defendants' request to consult with him and instead referred them to another lawyer, there is simply no basis to infer that Attorney Perez told the government the opposite.

Here, the evidence presented by the Defendants to support their new trial claim that the government had knowledge of Attorney Perez's alleged attorney-client relationship with the Defendants simply does not establish that a new trial would probably produce a different result nor does it in any way call into question the integrity of the verdict in this case.[5] Accordingly, the Defendants' motion for a new trial based on that evidence must be denied.

C. **The Defendants' Requests for Discovery and an Evidentiary Hearing**

The Defendants have also requested discovery and an evidentiary hearing on their motion for new trial. ECF No. 325 at 16. That relief is not warranted.

As an initial matter, Judge Becerra previously denied the Defendants' request for discovery. *See, e.g.*, ECF No. 327-1 at 21 ("I am not giving you discovery."), 49. Indeed, the discovery requested by the Defendants is simply not warranted. With respect to the Defendants' request for discovery "directed to Atty. Perez regarding his meetings with Defendants and his conversations with AUSA Shaw between May 28, 2021 and June 23, 2023," ECF No. 325 at 16, the Defendants have already obtained that discovery through the deposition that they took of Attorney Perez in the state court proceedings that they initiated, *see* ECF No. 336. Moreover, given the record and the utter dearth of facts supporting the Defendants' new trial claims concerning the government, the Defendants have failed to establish any justification for their

---

[5] The cases upon which the Defendants rely, *see* ECF No. 325 at 12-16, are inapposite and do not lead to a different conclusion. Those cases involved pretrial motions to dismiss charges or suppress evidence based on evidence establishing that the government had engaged in misconduct. *See, e.g.*, *United States v. Marshank*, 777 F. Supp. 1507, 1519-20 (N.D. Cal. 1991); *United States v. Sabri*, 973 F. Supp. 134, 137-38, 147 (W.D.N.Y. 1996); *United States v. Nieves*, No. CRIM. A. 97-46-1, 1997 WL 447992, at *1-4, 5, 7 (E.D. Pa. July 24, 1997). In stark contrast to those non-binding cases, this case is before the Court on the Defendants' Rule 33(b)(1) motion for a new trial based on newly discovered evidence, and there is no evidence whatsoever in this case of any government misconduct and no newly discovered evidence that warrants the granting of a new trial.

additional request for "discovery of AUSA Shaw and the two FBI case agents regarding their knowledge of the meetings between Atty. Perez [and] the Defendants." ECF No. 325 at 16. The Defendants' rank speculation that the requested discovery might provide relevant information is insufficient to warrant discovery. *See, e.g.*, *Arthur v. Allen*, 459 F.3d 1310, 1311 (11th Cir. 2006) ("[G]ood cause for discovery cannot arise from mere speculation."); *United States v. Arias-Izquierdo*, 449 F.3d 1168, 1189 (11th Cir. 2006) (affirming denial of post-trial discovery where the defendant only offered speculation about evidence that discovery might uncover); *United States v. Duran*, 486 F. App'x 768, 771 (11th Cir. 2012) (affirming denial of new trial motion without an evidentiary hearing and without discovery where defendant "offered only speculation about possible exculpatory evidence"). The Defendants' request for discovery should accordingly be denied.

Additionally, the record and the above discussion of the Defendants' new trial request demonstrate that an evidentiary hearing is unnecessary to resolve the Rule 33(b)(1) claims raised in the Defendants' new trial motion. As this Court and the Eleventh Circuit have recognized, "[w]hen the resolution of a motion for new trial is clear, the district court is not required to hold an evidentiary hearing." *United States v. Bogdan*, No. 05-14090-CR, 2012 WL 13168905, at *2 (S.D. Fla. Aug. 29, 2012) (quoting *Duran*, 486 F. App'x at 770), *aff'd*, 571 F. App'x 837, 839 (11th Cir. 2014) (concluding that "a hearing is not required where the resolution of a motion for a new trial is clear" and that "the lack of any evidence supporting [defendant's] claims made the resolution of his motion for a new trial abundantly clear"); *see also, e.g.*, *United States v. Hamilton*, 559 F.2d 1370, 1373 (5th Cir. 1977) ("The law of this circuit is well established that a motion for new trial may ordinarily be decided upon affidavits without an evidentiary hearing."). Here, the

9

Defendants have failed to establish any need or legitimate justification for an evidentiary hearing, and their request for an evidentiary hearing should be denied.

### D. Conclusion

For the reasons set forth above, the undersigned **RESPECTFULLY RECOMMENDS** that the Defendants' Substituted (Corrected/Clarifying and Amended) Joint Motion for New Trial Pursuant to Fed. R. Crim. P. 33(a) and Request for Evidentiary Hearing (ECF No. 325) be **DENIED**.

Within fourteen (14) days from the date of receipt of this Report and Recommendation, the parties shall serve and file written objections, if any, to this Report and Recommendation with the assigned United States District Judge. Failing to file timely objections will bar a *de novo* determination by the District Judge of any issue addressed in the Report and Recommendation, will constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions," and will only allow appellate review of the district court order "for plain error if necessary in the interests of justice." 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY RECOMMENDED** in Chambers in Miami, Florida, this 26th day of January 2026.

                                                                           _____
                                                                           EDUARDO I. SANCHEZ
                                                                           UNITED STATES MAGISTRATE JUDGE

cc:    Hon. Jose E. Martinez
        Counsel of record